[No. B085630. Second Dist., Div. Four. Sept. 18, 1996.]

FIRST CITY PROPERTIES, INC., Plaintiff and Respondent, v.
DONAL J. MacADAM, Defendant;
CATHERINE P. MacADAM, Claimant and Appellant;
CUMMINS & WHITE et al., Objectors and Appellants.

COUNSEL

Cummins & White, Michael M. Bergfeld, A. Justin Lum and Albert C. Lum for Claimant and Appellant and for Objectors and Appellants.

Lewitt, Hackman, Hoefflin, Shapiro, Marshall & Harlan, Richard M. Hoefflin and Jill A. Thomas for Plaintiff and Respondent.

OPINION

**HASTINGS, J.**—In October 1993, plaintiff and respondent First City Properties, Inc. (First City) obtained a money judgment against Donal J. MacAdam (Donal) in an action on a promissory note. Unable to collect on the judgment, in April 1994, First City obtained orders to appear for examination (Code Civ. Proc., § 708.120)[1] and served them along with subpoenas duces tecum on a number of third parties: Catherine P. MacAdam (Donal's wife, hereinafter referred to as Catherine), RPV Marketing, Inc. (RPV), and Rio Dulce Land and Cattle Inc. (Rio) in an effort to obtain financial information about Donal. First City also attempted to levy on shares of stock in RPV and Rio owned by Donal. After Catherine, RPV, and Rio filed

---

[1]All further statutory references shall be to the Code of Civil Procedure unless otherwise specified.

motions to quash the subpoenas and Catherine filed a third party claim as to the stock, the trial court imposed sanctions on Catherine, RPV, and Rio as well as their attorneys, Cummins & White. They appeal the order of sanctions.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Parties and the Postjudgment Collection Efforts*

   a. *RPV and Rio*

RPV and Rio are two corporations formed by Donal and Catherine. Donal and Catherine are admittedly the sole shareholders of both corporations. At a postjudgment debtor's examination, Donal testified that he had resigned as an officer and director of both RPV and Rio and that Catherine was now the sole officer and director of each of them and handled all their business operations.

When First City served the subpoenas duces tecum, and the orders to appear on the custodian of records of RPV and Rio, attorneys for Rio and RPV moved to quash the subpoenas on the grounds that RPV and Rio were not parties to the litigation, and that the subpoenas invaded their right to privacy and sought information unrelated to the judgment debtor, Donal.

   b. *Catherine*

First City served a subpoena duces tecum and an order to appear at an examination on Catherine. Catherine, represented by the same attorneys as RPV and Rio, joined in their motion to quash the subpoenas and also alleged she was in the 16th week of a high-risk pregnancy and that her doctor had advised against her participating in any court proceedings until 7 months later.

In May 1994, Catherine filed a third party claim of a superior security interest in shares of stock in Rio and RPV upon which First City had levied. Her claim was based upon her community property interest in the stock.

   c. *The Accountants*

Michael Miller and Sandra Eve Kardos are certified public accountants. First City served subpoenas on Miller and Kardos seeking financial

---

[2]The individual attorneys at Cummins & White who participated in these proceedings, John Carpenter and Michael Baranov, are also listed as appellants although they were not specifically named in the sanctions order.

Catherine, Rio and RPV jointly filed one appellants' brief; Cummins & White, Carpenter and Baranov filed a second, separate brief.

information about Donal, Catherine, RPV and Rio. Miller and Kardos filed motions to quash these subpoenas on the grounds that they were not "parties to this litigation, and the deposition subpoenas exceed the scope of permissible discovery by invading [their] right to privacy and seeking information that is unrelated to the judgment debtor and which is therefore irrelevant to this action."

### d. *The Attorneys*

Catherine, RPV, Rio, and Miller and Kardos were represented by the law firm of Cummins & White. The two attorneys who prepared and argued the motions to quash the subpoenas of Catherine, RPV, Rio, and Miller and Kardos and who filed the third party claim on behalf of Catherine were John Carpenter and Michael Baranov.

## 2. *The Requests for Sanctions*

In both the opposition to the motions to quash filed by Catherine, RPV, and Rio, and the opposition to Catherine's third party claim, First City requested sanctions.[3]

In the opposition to the motions to quash, First City cited several reasons for the imposition of sanctions: (1) that the motions were untimely filed; (2) that the motions were improperly filed by facsimile transmission; (3) that RPV had no standing to file the motions because it was a suspended corporation; (4) that the motions to quash were without merit, warranting sanctions under section 1987.2;[4] and (5) that Catherine, RPV and Rio had failed to object with specificity to the subpoena, thereby waiving any further objections. Finally, First City claimed that the failure to appear on the date set by the subpoena warranted sanctions under section 1992 and section 128.5.[5]

In its opposition to Catherine's third party claim, First City requested sanctions on the grounds that Catherine failed to sustain the burden of proof

---

[3]First City also requested sanctions in connection with its opposition to the motion to quash of Miller and Kardos, the accountants, but that pleading is not included in the record. Miller and Kardos are not parties to this appeal.

[4]Section 1987.2 provides that the court may "in its discretion award the amount of the reasonable expenses incurred in making or opposing the motion, including reasonable attorneys' fees, if the court finds the motion was made or opposed in bad faith or without substantial justification or that one or more of the requirements of the subpoena was oppressive."

[5]Section 1992 provides that "A witness disobeying a subpoena also forfeits to the party aggrieved the sum of five hundred ($500), and all damages which he may sustain by the failure of the witness to attend, which forfeiture and damages may be recovered in a civil

on a third party claim, cited inapplicable law, failed to offer information about Donal's separate property upon which First City could levy, and failed to withdraw the claim even when these deficiencies were pointed out to her counsel. Section 128.5 was the only statutory authority cited to support this sanctions request.

On the date of the hearing on the motions to quash and third party claim, First City's counsel, Richard Hoefflin, filed a declaration stating that he and other attorneys in his law firm had expended $3,187.50 in fees reviewing and preparing opposition to the motion to quash of RPV and Rio; $2,495 in reviewing and preparing opposition to the motion to quash of Miller and Kardos; and $2,187.50 in reviewing and preparing opposition to Catherine's third party claim.

### 3. *The Sanctions Orders*

At the hearing on the motions to quash and the third party claim of Catherine, the trial court indicated that the motions to quash were properly and timely filed, but denied them on the grounds that RPV was a suspended corporation.

The court then stated, inter alia, "I've had the benefit of reading the deposition [about] the involvement of [Donal] intimately with these corporations, including the fact that [Donal] seems to work for free for them, . . . so I think it is an appropriate field in which plaintiff may plow to see if there are any potatoes in it. [¶] . . . [¶] [The subpoena] pertains to the interests that [the] MacAdams have in the corporation. It is really a sole corporation owned by both MacAdams, according to [the MacAdams]. [¶] . . . [¶] [Counsel for First City] can look under every rock he can find . . . and he is looking. [¶] . . . [¶] It is a corporation owned by [Donal]. [¶] . . . [¶] So First City certainly has a legitimate interest in inquiring. Let's not engage in sophistries, okay? [¶] Motion is denied."

As to the motion to quash the subpoena served on Catherine, the court stated, "I don't see why she can't be deposed. If she needs to be deposed, they can depose her at her home. [¶] . . . [¶] Your declaration from your doctor doesn't say anything. It says—doesn't say that it is going to be

action." There is no indication in the record that the court relied upon this section when it ordered sanctions or that it intended to order a forfeiture. Therefore, we will not discuss it further.

Section 128.5 provides in pertinent part: "(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."

harmful to the pregnancy." The court then granted Catherine's counsel's request for a referee to rule on relevancy objections at the deposition and First City's counsel offered to accommodate Catherine's condition.

Counsel for First City then argued for an award of attorney fees, stating, "[I]t is rather clear that these motions should not have been filed. It is in concert with continuing efforts of Donald [*sic*] MacAdam to thwart our collection efforts. They know the rules of the game, Your Honor. . . . [¶] Simply stated, we are looking for assets, liabilities, income and expenses and we've got to be chasing this bouncing ball and playing these unnecessary, unreasonable games. . . . [¶] It is clear that in connection with this that everybody knows the rules of the game; and if you're going to play in this very dangerous mine field, then you are going to play according to the rules, and in that regard, Your Honor, we have incurred a lot of attorneys' fees. We have done a lot of digging, and quite frankly, without that digging I don't think that we would have been able to necessarily succeed on some of those motions. The camouflaging has been horrific. I don't want to say every, but there have been so many different hurdles against us to get information and collect that to which we are entitled that I think this court ought to send a message that it is time for the game playing exercises to stop. It is time for us to be compensated for the fees and costs which we have incurred in order to obtain the judgments that this court has now given us."

The court simply stated in response, "Okay. The court will allow attorney's fees as follows. As to the motion to quash subpoena duces tecum on behalf of Catherine MacAdam and Custodian of Records of RPV and Rio Dulce the court awards $3,187.50. [¶] With regards to motion to quash with regards to Miller and Kardos, sum of $2,495. [¶] With regards to the third party claim of Catherine M. MacAdam $2,187."

In the written notice of ruling, prepared by counsel for First City, no statutory grounds for the sanctions were cited, nor were any specific reasons cited for imposition of sanctions. The minute order of the hearing is not contained in the joint appendix prepared by the parties.

Catherine, RPV and Rio appeal from this order, contending that (1) the sanctions were unwarranted since Catherine, RPV and Rio acted in good faith in moving to quash the subpoenas; (2) Catherine's third party claim was filed in good faith; (3) the court could not impose sanctions on Catherine, RPV or Rio since they were not parties to the underlying action; (4) the court erred in denying RPV standing to file the motions; and (5) the amount of attorney's fees sought was unreasonable and unsupported by counsel's declarations. Finally, they contend that the court's order was void since it

failed to articulate the statutory basis and specific circumstances warranting the imposition of sanctions.

In a separate brief, Cummins & White, Carpenter, and Baranov contend that there was no bad faith justifying the imposition of sanctions, and that their due process rights were violated because the request for sanctions did not comply with local rules, was based on late-filed evidence, and the order failed to recite in detail the conduct or circumstances justifying the order, or make specific findings as required by section 128.5 or 1987.2.

## DISCUSSION

### 1. *The sanctions order pertaining to the third party claim*

In connection with the sanctions requested in opposition to Catherine's third party claim, section 128.5 was the only statutory basis cited by First City. Section 128.5 explicitly requires that "[a]n order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order." ▦ The order in this instance does not recite any conduct or circumstances upon which the court justified issuance of the sanctions.

First City argues that the court's statements at the hearing clearly indicated the basis for the order. However, when making the award, the court merely stated: "The court will allow attorney's fees as follows. . . . [¶] With regards to the third party claim of Catherine M. MacAdam $2,187." This does not set forth "in detail the conduct or circumstances" justifying the order.

For the foregoing reason, the order awarding sanctions in favor of First City, in the sum of $2,187 incurred for opposing Catherine's third party claim, is invalid. (*Corcoran* v. *Arouh* (1994) 24 Cal.App.4th 310, 316 [29 Cal.Rptr.2d 326].)

### 2. *The sanctions order as to the motions to quash*

▦ In opposition to the motions to quash, First City cited sections 128.5, section 1987.2 and section 1992.[6] Because the order is silent with regard to which section the court relied upon to award the sanctions, we have no foundation upon which to review the act of the court. If we indulge an

---

[6]One of the section headings of the opposition to the motions to quash cited section 708.170, pertaining to the failure to appear for an oral examination, but no reference to that statute was contained in the actual discussion.

inference that the court relied upon section 128.5 to justify the sanctions, then the order is infirm for the reasons stated above.

First City contends that because it also cited section 1987.2 in its opposition that the court obviously based the award of sanctions on that section. Indulging in this inference, section 1987.2 does not contain the same language of section 128.5, that a written order be issued setting forth the specific conduct or circumstances justifying the sanctions. We have found no cases construing the requirements of an order pursuant to section 1987.2 for issuance of sanctions. It is apparently an issue of first impression.

First City argues that section 1987.2 is in reality a discovery statute and that specific written findings are not required for an award of discovery sanctions. While we recognize that specific written findings are not required for issuance of sanctions in routine discovery disputes (*Mattco Forge, Inc.* v. *Arthur Young & Co.* (1990) 223 Cal.App.3d 1429 [273 Cal.Rptr. 262]), we cannot agree that treatment of sanctions pursuant to section 1987.2 falls within the same purview as issuance of discovery sanctions.

In 1986 the Legislature passed a comprehensive revision of the discovery act which included section 2023, a statute specifically addressing sanctions for misuse of the discovery process. (Stats. 1986, ch. 1334, § 2, operative July 1, 1987, later amended by Stats. 1987, ch. 86, § 6, eff. July 2, 1987, operative July 1, 1987.) Section 2023 delineates certain types of misuses of the discovery process and gives the court the power to impose a variety of sanctions against anyone engaging in such conduct. In fact, the court is *required* to impose monetary sanctions "unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2023, subd. (b)(1).)

Section 2023 discovery sanctions can be distinguished from sanctions allowed for other types of conduct pursuant to sections 128.5, 177.5, and California Rules of Court, rule 227 which grant the trial court discretion to award sanctions. Similarly, section 1987.2 grants the court discretion to impose sanctions upon certain conditions: "if the court finds the motion was made or opposed in bad faith or without substantial justification or that one or more of the requirements of the subpoena was oppressive." Fairness and effective appellate review require that where the court exercises its discretion to issue sanctions, it delineate the specific acts upon which the sanctions are awarded. (See *Lavine* v. *Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019, 1029 [215 Cal.Rptr. 708].)

*Caldwell* v. *Samuels Jewelers* (1990) 222 Cal.App.3d 970 [272 Cal.Rptr. 126] addressed sanctions pursuant to section 177.5 and California Rules of

Court, rule 227.[7] In reviewing the appealed sanction order, the court noted that the trial court stated that sanctions were justified "for good cause appearing." The appeals court recognized that section 177.5, like section 128.5, requires a detailed recitation of the conduct or circumstances justifying the order and it cited *Lavine* v. *Hospital of the Good Samaritan, supra*, 169 Cal.App.3d 1019, which observed that the purpose of detailed findings "is to fulfill the 'rudiments' of due process required for governmental imposition of a penalty upon an attorney or party—both for due-process' own, constitutional sake and to ensure that the power conferred by the statute will not be abused. [Citations.]" The court in *Lavine* also noted that " 'in some cases the court's recitation will be an invaluable aid to a reviewing court determining whether the trial court abused its discretion in awarding sanctions. [Citation.]' (*Id.* at p. 1029.)" (222 Cal.App.3d at p. 977.) The court then turned to California Rules of Court, rule 227, which contains no requirement of a written order, and held, "[J]ust as with the issue of notice and opportunity to be heard, due process requires that any order giving rise to the imposition of sanctions state with particularity the basis for finding a violation of the rule. (Cf. *Fegles* v. *Kraft* [1985] 168 Cal.App.3d 812, 816 [214 Cal.Rptr. 380].)" In other words, the court read into rule 227 a requirement "that the person being sanctioned be told what conduct or circumstances justified the imposition of sanctions." (222 Cal.App.3d at p. 978.) We believe the same requirement should be read into section 1987.2.

■ First, without a recitation of the statute relied upon by the trial court, we cannot be certain that the trial court did not err if it was relying upon section 128.5. However, and more importantly, when an appeal is processed on a standard of abuse of discretion, the party aggrieved must be put on notice of the acts for which it was sanctioned in order to mount an effective review. Failure to delineate the grounds for exercise of discretion precludes meaningful review, a denial of due process.[8]

---

[7]Section 177.5 provides that "A judicial officer shall have the power to impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), . . . payable to the county in which the judicial officer is located, for any violation of a lawful court order by a person, done without good cause or substantial justification." It also requires a written order which "shall recite in detail the conduct or circumstances justifying the order."

California Rules of Court, rule 227 provides that: "The failure of any person to comply with these rules, local rules, or order of the court, unless good cause is shown, or failure to participate in good faith in any conference those rules or an order of the court require, is an unlawful interference with the proceedings of the court. The court may order the person at fault to pay the opposing party's reasonable expenses and counsel fees and to reimburse or make payment to the county. . . ."

[8]At oral argument, First City contended that appellants had the opportunity to, but did not object to the form of the order and have thus waived this argument on appeal. As this

## DISPOSITION

In a situation such as this, where it is unclear what statute the court used as authority for its issuance of sanctions, the reporter's transcript and minute order do not enlighten us as to the precise reasons for the order,[9] and the order prepared by counsel for First City fails to set forth the statutes and reasons, due process has not been complied with. The sanctions order is reversed. The parties are to bear their own costs on appeal.

Epstein, Acting P. J., and Baron, J., concurred.

A petition for a rehearing was denied October 9, 1996.

---

argument was not raised in First City's brief, we do not consider it. (*New Plumbing Contractors, Inc.* v. *Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098 [9 Cal.Rptr.2d 469]; *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1267, fn. 16 [284 Cal.Rptr. 18].)

[9]See *Olson Partnership* v. *Gaylord Plating Lab, Inc.* (1990) 226 Cal.App.3d 235, 241 [276 Cal.Rptr. 493], which holds that a detailed formal order is not required where the reporter's transcript and minute order reveal specific reasons for imposition of sanctions.